UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.

STRAN & COMPANY, INC.

     Plaintiff,

v.

INNOVATIVE GENETICS INC. d/b/a IG PAK
and ALEJANDRO TANI

     Defendants.

_____/

## COMPLAINT

The Plaintiff, Stran & Company, Inc. ("Stran" or the "Plaintiff"), by and through its undersigned counsel, submits the following Complaint against the defendants, Innovative Genetics, Inc., which also does business as IG Pak ("Innovative Genetics") and Alejandro Tani ("Tani", collectively with Innovative Genetics, the "Defendants") and allege as follows:

### Nature of the Claim

1.     On or about March 6, 2023, Stran, an industry leader in outsourced marketing solutions, and Innovative Genetics, a purveyor of intellectual property, packaging and physical production assets related to the regulated cannabis industry, entered into a written agreement whereby Stran was, among other things, contractually obligated to work with Innovative Genetics regarding the manufacture, import and delivery to Innovative Genetics of certain branded packaging (the "Goods") from one or more factories based in the People's Republic of China ("China"). Innovative Genetics intended to utilize the Goods in the ordinary course of its

32736746-v3

business.

2. While Stran was paid on a small percentage of the orders, throughout the course of 2023 and early 2024—at the Defendants' express direction and based upon certain representations related to the Goods—Stran advanced more than six hundred thousand dollars ($600,000.00 (US)) (the "Advanced Funds") to persons acting on behalf of or in concert with the Defendants in order to effectuate the Chinese factories' manufacture and shipment of the Goods for ultimate delivery to Innovative Genetics.

3. In fact, the Defendants misrepresented the very existence of the Goods, as well as misrepresented that the Goods were ready to ship from the Chinese factories.  The Defendants diverted the Advanced Funds away from the Chinese factories and converted it to their own use. Notwithstanding, the written agreement entitles Stran to payment from Innovative Genetics irrespective of whether Innovative Genetics ever received the Goods.   As to the orders for which Stran was not paid and Advanced Funds, Stran is owed approximately $850,000 not including interest and attorneys' fees.

4. Tani personally guaranteed all of Innovative Genetics contractual obligations arising under the agreement.

### The Parties

5. The Plaintiff Stran is a Nevada corporation with a principal place of business at 500 Victory Road, Suite 301, Quincy, Massachusetts 02171.

6. Innovative Genetics is a Delaware corporation with a principal place of business at 1300 Washington Avenue, Suite 991, Miami Beach, Florida 33139.

7. Tani is an individual who resides at 450 Alton Road, Apartment 2410, Miami Beach, Florida, 33139-6721.

**Jurisdiction and Venue**

8.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that the controversy is between citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

**Facts**

A.      **The Nature of the Parties' Businesses and Relationship**

10.     Established in 1994, Stran is an outsourced marketing solutions provider specializing in promotional products and services.   Stran is publicly traded on the NASDAQ-CM stock exchange, carrying the NASDAQ ticker symbol SWAG.

11.     Tani was a member of Stran's Board of Directors from November 8, 2021 until his resignation on or about June 16, 2025.

12.     Innovative Genetics purports on its website, https://www.innovativegenetics.com (the "Innovative Genetics Website"),[1] to "develop and license BioIP—formulations, brand systems, and packaging… that power the scale of compliant, next-gen therapeutic products."

13.     Additionally, Innovative Genetics also does business as IG Pak.  IG Pak purports on its website, https://www.igpak.com (the "IG Pak Website"),[2] to provide "sustainable packaging solutions."

14.     At all relevant times, Tani has served in a leadership role at Innovative Genetics, including at IG Pak.

B.      **The Branded Packaging Agreement Between Stran and Innovative Genetics**

15.     On or about March 6, 2023, Stran and Innovative Genetics entered into a Branded

---

[1] Last visited on August 10, 2025
[2] Last visited on August 10, 2025

Packaging Agreement (the "Contract").  Attached as Exhibit A and incorporated into the Contract was a Statement of Work No. 1 (the "SOW").

16.     As set forth in the Section 2 of the SOW, the purpose of the Contract was for Stran to provide Innovative Genetics with "branding packaging products from various China factories, finance the cost to manufacture that packaging and import/transport those goods into one location in the US where [Innovative Genetics] will then co-pack, sell and distribute the final product themselves."

17.     The Contract's SOW sets forth a series of orders for the Goods totaling $1,159,3330 (the "Contract Amount").  For avoidance of doubt, the Contract entitles Stran to receive the Contract Amount upon delivery of the Goods to Innovative Genetics.  The approximate time from placing the orders for the Goods with the Chinese manufacturers to the delivery of the goods to Innovative Genetics ranged from four (4) to eight (8) weeks.

18.     In furtherance of Stran's performance under the Contract, and at the express direction of Innovative Genetics, Stran made the Advance Payment under the Agreement.

19.     Pursuant to Section 5 of the Contract, Innovative Genetics agreed to pay Stran within ninety (90) days of invoicing but, notwithstanding, Stran could, at any time, "*modify, reduce or eliminate payment or credit terms* offered to [Innovative Genetics] if Stran determines, *in its sole discretion*, that the credit risk is unacceptable."

20.     The Contract is governed by Massachusetts law.

**C.     The Tani Guaranty**

21.     In connection with the Contract, Tani executed a Personal Guaranty (the "Guaranty") wherein, pursuant to Section 1.1, he:

> absolutely, unconditionally, and irrevocably guarantees, as primary obligor and not merely as surety, the punctual payment, when due, whether at stated maturity,

by acceleration, or otherwise, of all present and future obligations, liabilities, covenants, and agreements required to be observed, performed, or paid by IG, including the Purchase Order whether for principal, interest (including interest accrued after the commencement of any insolvency, bankruptcy or reorganization of IG), costs, expenses, and fees and agrees to pay any and all reasonable costs, fees, and expenses incurred by Stran in any way related to the enforcement or protection of Stran's rights hereunder (collectively, the "**Obligations**")

22.     Pursuant to Section 7.1 of the Guaranty, Tani agreed to pay to Stran all of its reasonable expenses, including, but not limited to, its attorneys' fees and costs in connection with enforcement of its of rights and remedies relative to the Obligations.

**D.     The Defendants Misrepresent Facts to Induce Stran to make the Advance Payments**

23.     At all relevant times related hereto, Nicolai Karlsvik ("Karlsvik") was authorized to act on behalf of Innovative Genetics, and is listed on the IG Pak website as its Chief Operating Officer.

24.     As to a small percentage of the Contract Amount, Stran advanced funds, goods were delivered and Innovative Genetics paid Stran pursuant to the Contract.

25.     However, as to other invoices at issue, between on or about March 2023 through and including February 2024, Karlsvik sent multiple e-mails (the "Karlsvik E-Mails") to Stran's Chief Financial Officer that included written invoices that purported to originate from the Chinese factories, or agents working for or on behalf of the Chinese factories, or both, related to the manufacture of the Goods under the Contract's SOW (the "Outstanding Invoices").

26.     The Karlsvik E-Mails misrepresented critical facts regarding the production and shipment of the Goods from the Chinese factories for the Outstanding Invoices, including that the Goods were "ready to be shipped" from the Chinese factories to the locations in the United States.

27.     The Karlsvik E-Mails and the Outstanding Invoices were intended to induce Stran

to make the Advance Payments to Innovative Genetics, or agents working on behalf of or in concert with Innovative Genetics.

28.     The Karlsvik E-Mails and the Outstanding Invoices did in fact induce Stran to make the Advance Payments to Innovative Genetics, or agents working on behalf of or in concert with Innovative Genetics.

29.     Upon information and belief, the Goods for the Outstanding Invoices were never manufactured.  The Goods were never shipped to the United States and the orders remain outstanding (the "Outstanding Orders").

30.     Upon information and belief, between on or about March 2023 through and including February 2024, Karlsvik issued the Karlsvik E-mails at the direction of and in concert with Tani and Chan.

31.     Over the course of the last two years, the Defendants have never reimbursed Stran for the Advance Payments nor paid the amounts Stran is entitled to under the Contract relative to such Outstanding Orders.

**E.      Stran's Demand for the Amount Owed Results in Excuses Then Silence**

32.     After Defendants repeated verbal assurances that Stran would be paid in full went unfulfilled, on or about April 15, 2025, Stran wrote to the Defendants to demand immediate payment of the amounts due and owing.  In that correspondence and to the extent necessary, Stran invoked its right under Section 5 of the Contract to modify the credit terms in demanding that all outstanding amounts be immediately paid.

33.     On or about April 17, 2025, the Defendants responded claiming that no payment is owed for any of the Outstanding Orders for which Stran sent the Advanced Payments as directed because none of the product paid for had been shipped by the various Chinese factories.

The Defendants relied on language in the SOW that reference the payment terms as "Net 90 days FOB, Hilsboros, OR, USA."

34.     The Defendants' position is patently absurd for several reasons including the Advance Payments were made *two years ago* based on written misrepresentations regarding the stage of production of the Goods, including that the Goods (which had a 4-8 week lead time) were "ready to be shipped." Assuming, *arguendo,* that such language is applicable (which contradicts that payment is to be made within 90 days of the invoice), Stran invoked its contractual right to alter the credit terms and demand immediate payment.

35.     Upon information and belief, some or all of the Advance Payments were never received by the Chinese factories and based upon Stran's initial investigation, one or more of the Invoices were fabricated in an effort to induce Stran to make the Advance Payments. Stran's initial investigation also identified Bill Chan as an alleged third-party who was coordinating certain aspects of manufacture of the Goods and the Shipment of the Goods to the U.S. Bill Chan is listed on the IG Pak website as its Head of Manufacturing.

36.     On July 14, 2025, Stran's counsel sent the Defendants a Final Demand and Notice of Intent to File Lawsuit demanding repayment of the Wired Amounts by July 25, 2025.

37.     The Defendants did not respond to the July 14, 2025 correspondence nor make any payment as demanded. The IG Pak Website was taken offline shortly after Defendants' receipt of the correspondence.

## FIRST CAUSE OF ACTION
## BREACH OF CONTRACT AS AGAINST INNOVATIVE GENETICS

38.     The Plaintiff incorporates the allegations set forth in paragraphs 1 through 37 of its Complaint as if fully set forth herein.

39.     Stran and Innovative Genetics entered into a binding and enforceable Contract.

40.     Stran fully performed its obligations under the Contract.

41.     Innovative Genetics breached the Contract by, despite demand, failing to reimburse the Advance Payments and the amounts Stran is entitled to under the Contract relative to the Outstanding Orders.

42.     As a direct and proximate cause of Innovative Genetics' breach, Stran has been damaged in the approximate amount of at least $850,000, the exact amount to be established at trial, plus recoverable interest, fees, costs and expenses.

## SECOND CAUSE OF ACTION
## BREACH OF GUARANTY AS AGAINST TANI

43.     The Plaintiff incorporates the allegations set forth in paragraphs 1 through 42 of its Complaint as if fully set forth herein.

44.     Stran and Tani entered into a binding and enforceable Guaranty.

45.     Stran fully performed its obligations under the Guaranty.

46.     Tani breached the Guaranty by, despite demand, failing to reimburse the Wired Amounts and pay Stran the amounts it is entitled to under the Contract relative to the Outstanding Orders.

47.     As a direct and proximate cause of Tani's breach, Stran has been damaged in the approximate amount of at least $850,000, the exact amount to be established at trial, plus recoverable interest, fees, costs and expenses.

## THIRD CAUSE OF ACTION
## FRAUDULENT MISREPRESENTATION CLAIM AS AGAINST THE DEFENDANTS

48.     The Plaintiff incorporates the allegations set forth in paragraphs 1 through 37 of its Complaint as if fully set forth herein.

49.     Defendants falsely represented to Stran as to the existence of the Outstanding Orders themselves or, at a minimum, that the product from each Chinese manufacturer was

"ready to be shipped."

50.     Defendants knew of the falsify of such representations.

51.     The representations were made with the purpose of inducing Stran to make the Advance Payments.

52.     Stran reasonably relied on the representations particularly given, at the time payments were made, Tani served on Stran's Board of Directors.

53.     As a direct and proximate cause of Defendants' misrepresentations, Stran has been damaged in the approximate amount of at least $850,000, the exact amount to be established at trial, plus recoverable interest, fees, costs and expenses.

**FOURTH CAUSE OF ACTION**
**NEGLIGENT MISREPRESENTATION CLAIM AS AGAINST THE DEFENDANTS**

56.     The Plaintiff incorporates the allegations set forth in paragraphs 1 through 37 of its Complaint as if fully set forth herein.

57.     In the course of its business, defendants supplied false information to Stran as to the existence of the Outstanding Orders themselves or, at a minimum, that the product from each Chinese manufacturer was "ready to be shipped" in their business transactions

58.     Defendants failed to exercise reasonable care or competence in obtaining or communication the false information.

59.     Stran justifiably relied on the representations particularly given, at the time payments were made, Tani served on Stran's Board of Directors.

60.     As a direct and proximate cause of Defendants' misrepresentations, Stran has suffered pecuniary loss and been damaged in the approximate amount of at least $850,000, the exact amount to be established at trial, plus recoverable interest, fees, costs and expenses.

## FIFTH CAUSE OF ACTION
## COMMON-LAW CONVERSION BY THE DEFENDANTS

61.     The Plaintiff incorporates the allegations set forth in paragraphs 1 through 37 of its Complaint as if fully set forth herein.

62.     Stran has possession of the Advanced Funds.

63.     Through their actions, Defendants converted the Advanced Funds to their own use, without right by appropriating the Advanced Funds thereby deriving Stran of the Advanced Funds.

64.     As a direct and proximate cause of Defendants' conversion, Stran has been damaged in the approximate amount of at least $850,000, the exact amount to be established at trial, plus recoverable interest, fees, costs and expenses.

## SIXTH CAUSE OF ACTION
## UNJUST ENRICHMENT AS AGAINST DEFENDANTS
### *AS ALTERNATIVE BASES FOR RELIEF*

65.     The Plaintiff incorporates the allegations set forth in paragraphs 1 through 37 of its Complaint as if fully set forth herein.

66.     Stran conferred a measurable benefit upon Defendants through its provision of the Advanced Funds.

67.     Stran reasonably expected compensation from Defendants, namely the Contract Amount.

68.     Innovative Genetics accepted the benefit with the knowledge, actual or chargeable of Stran's reasonable expectation.

69.     As such, it would unjust and inequitable for Defendants to retain the Advanced Funds.

70.     As a direct and proximate cause of Defendants' unjust enrichment, Stran has been damaged in the approximate amount of at least $850,000, the exact amount to be established at trial, plus recoverable interest, fees, costs and expenses.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully request that the Court enter judgment:

(1)     Ordering the Defendants to pay the Plaintiff compensatory damages of approximately $850,000, plus pre-judgment and post-judgment interest;

(2)     Attorneys' fees and costs; and

(3)     Granting the Plaintiff such other and further relief as the Court may deem just and proper.

Dated: August 20, 2025                              Respectfully submitted,

**ROBINSON** + **COLE LLP**
777 Brickell Avenue, Suite 680
Miami, FL 33131
Telephone: (786) 725-4120
Facsimile: (786) 725-4121

By: /s/  *Eugene P. Murphy*
       Eugene P. Murphy
       Florida Bar No. 638501
       emurphy@rc.com
       ***Attorneys for Plaintiff***

-11-